**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| AARDMAN ANIMATIONS LIMITED and WALLACE & GROMIT LIMITED, | |
| Plaintiffs, | Case No. 25-cv-09364 |
| v. | |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," | |
| Defendants. | |

## COMPLAINT

Plaintiffs Aardman Animations Limited and Wallace & Gromit Limited (collectively, "Aardman" or "Plaintiffs") hereby bring the present action against the Partnerships and Unincorporated Associations Identified on Schedule A attached hereto (collectively, "Defendants") and allege as follows:

### I.    JURISDICTION AND VENUE

1.     This Court has original subject matter jurisdiction over Aardman's claims pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act 17 U.S.C. § 501, *et seq.*, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may exercise personal jurisdiction over Defendants because Defendants structure their business activities to target consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores operating under the aliases identified on Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting

1

up and operating e-commerce stores that target United States consumers; offer shipping to the United States, including Illinois; accept payment in U.S. dollars; and, on information and belief, sell products using infringing and counterfeit versions of Aardman's federally registered trademarks and/or unauthorized copies of Aardman's federally registered copyrighted works (collectively, the "Unauthorized Products") to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Aardman substantial injury in the state of Illinois.

## II.     INTRODUCTION

3.     Aardman filed this case to prevent e-commerce store operators who trade upon Aardman's reputation and goodwill from further selling and/or offering for sale Unauthorized Products. Defendants create e-commerce stores under one or more Seller Aliases and then advertise, offer for sale, and/or sell Unauthorized Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share identifiers, such as design elements and similarities of the Unauthorized Products offered for sale, establishing that a logical relationship exists between them, and that Defendants' infringing operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants take advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate Aardman's intellectual property rights with impunity. Defendants attempt to avoid liability by operating under one or more Seller Aliases to conceal their identities, locations, and the full scope and interworking of their operation. Aardman is forced to file this action to combat Defendants' counterfeiting of its registered trademarks and infringement of its registered copyrighted works, as well as to protect consumers from purchasing Unauthorized Products over the Internet. Aardman has been, and continues to be, irreparably

damaged through consumer confusion and dilution of its valuable trademarks and infringement of its copyrighted works because of Defendants' actions and therefore seeks injunctive and monetary relief.

### III.    THE PARTIES

4.      Plaintiffs are private United Kingdom-based corporations having their principal places of business at Gas Ferry Road, Bristol BS1 6UN, United Kingdom. Plaintiffs are wholly owned subsidiaries of Aardman Holdings Limited. Plaintiffs own the trademarks and copyrights asserted in this action. Plaintiff Aardman Animations Limited, Plaintiff Wallace & Gromit Limited, and Aardman Holdings Limited are referred to herein together or individually as "Aardman."

5.      Founded in 1972, Aardman began with short, animated sketches for the BBC's *Vision On* series. Today, Aardman is a world-renowned animation studio, known for its unique brand of "classic stop-motion style" of animation, with several feature films under its belt, including its production of *Chicken Run* in the year 2000. To date, Aardman has won four Oscars, including one for its October 2005 feature film *Wallace & Gromit: the Curse of the Were-Rabbit*, which also won a BAFTA for best British Film from the British Academy of Film and Television Arts. Aardman's award-winning and innovative animation style and beloved characters, has made it one of the most accomplished animation studios to date. It has worked with Dreamworks, Sony, and was one of nine studios working with Disney on *Star Wars: Visions Volume 2*. Two of Aardman's most iconic and celebrated properties are the subject of this action – Wallace & Gromit and Shaun the Sheep.

6.      One of Aardman's most beloved and iconic duos is Wallace and Gromit, pictured below. Wallace is a cheese loving inventor whose home is filled with various gadgets designed to

reduce work. Wallace is depicted with his anthropomorphic dog, Gromit, who spends much of his time saving his owner from crazy scenarios and mysterious characters. Since their introduction in 1989 in the Academy Award nominated film *Wallace & Gromit: A Grand Day Out*, the pair have starred in six additional films under the *Wallace & Gromit* moniker: *The Wrong Trousers*, *A Close Shave*, *Cracking Contraptions*, *Curse of the Were-Rabbit*, *A Matter of Loaf and Death*, and *World of Invention*, with an eighth film scheduled to be released in 2024. The Wallace & Gromit franchise was so successful that it led to the creation of a second franchise for Aardman – Shaun the Sheep.

7.      Shaun the Sheep, pictured below, is one of Aardman's most famous characters. Since his introduction in the film *Wallace & Gromit: A Close Shave*, Shaun the Sheep has become an iconic entry in Aardman's catalog of unique and vivid characters. Shaun is a boisterous, curious, and adventure loving sheep that leads the rest of the flock on the farm. While he loves to cause mischief and make it difficult on the farmer's dog, Bitzer, to keep the flock in line, Shuan is well natured, cares for his friends on the farm, and uses his intelligence and resourcefulness to get the flock out of situations he puts them in. Aardman has created six series of *Shaun the Sheep*, with its most recent series being titled *Shaun the Sheep: Adventures from Mossy Bottom*.

8.      Some of the characters and character names made famous by the Wallace & Gromit and Shaun the Sheep franchises include, but are not limited to:[1]

---

[1] The characters contained within the table are not an exhaustive list of the characters embodied in Aardman's copyrighted works. This table is included only to provide examples of the characters found on the infringing products offered for sale or sold by Defendants. Regardless of any changes in their design, each of these characters, among others contained within Aardman's copyrighted works, have always maintained their distinctive qualities and unique elements of expression.

| | |
|---|---|
| **Wallace** |  |
| **Gromit** |  |
| **Feathers McGraw** |  |
| **Shaun the Sheep** |  |

| | |
|---|---|
| **Bitzer** |  |
| **The Farmer** | |
| **Pidsley** | |
| **The Naughty Pigs** | |

9.     Before Defendants' acts described herein, Aardman launched the Wallace & Gromit and Shaun the Sheep franchises ("Aardman Franchises") and their related line of products bearing their famous WALLACE & GROMIT and SHAUN THE SHEEP marks. Aardman has also registered a multitude of works related to the Aardman Franchises and the distinctive characters embodied therein with the United States Copyright Office (the "Aardman Copyrighted Works").

10.     The Aardman Copyrighted Works are registered with the United States Copyright Office. True and correct copies of the records from the U.S. Copyright Office website for the Aardman Copyrighted Works are attached hereto as **Exhibit 1**. The Aardman Copyrighted Works embody the distinctive characters found in paragraph 8 above.

11.     Among the exclusive rights granted to Aardman under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Aardman Copyrighted Works to the public. Since first publication, the Aardman Copyrighted Works have been used on Aardman's products and are featured on Aardman's official websites.

12.     Aardman markets and sells a variety of Wallace & Gromit and Shaun the Sheep products, including homeware, clothing, apparel and accessories, art prints, jewelry, gardening ornaments and supplies, plushies, games, and stationary (collectively, "Aardman Products").

13.     Aardman Products have become enormously popular.  Among the purchasing public, Aardman Products are instantly recognizable as such. The Wallace & Gromit and Shaun the Sheep brands (hereinafter collectively referred to as the "Aardman Brands") have become global successes and Aardman Products are among the most recognizable in the world. Aardman Products are distributed and sold to consumers through its official shop: https://gromitunleashedshop.org.uk/.

7

14.     Aardman has used the WALLACE & GROMIT and SHAUN THE SHEEP trademarks, and other trademarks, for many years and has continuously sold products under its trademarks (collectively, the "Aardman Trademarks"). As a result of this long-standing use, strong common law trademark rights have amassed in the Aardman Trademarks. Aardman's use of the marks has also built substantial goodwill in the Aardman Trademarks. The Aardman Trademarks are famous marks and valuable assets of Aardman. Aardman Products typically include at least one of the Aardman Trademarks and/or Aardman Copyrighted Works.

15.     The Aardman Trademarks are registered with the United States Patent and Trademark Office, a non-exclusive list of which is included below.

| Registration Number | Trademark | Registration Date | Goods and Services |
|---|---|---|---|
| 6,763,807 | AARDMAN | Jun. 21, 2022 | For: Bags, namely, shoulder bags, carry-all bags, rucksacks, sports bags, satchels, handbags and purses; wallets, purses; trunks for travelling and travelling bags; umbrellas, parasols; toiletry cases sold empty; dog wardrobes, namely, clothing and headwear for dogs in Class 018.<br><br>For: Advertising services; advertising agency services; production of advertising films and audio-visual advertising media; design of advertising materials, namely, development of advertising concepts; marketing services; public relations; advertising, promotional advertising of products and services of third parties through sponsoring arrangements and license agreements relating to sporting events, cultural events, live |

| | | | theatrical shows, musical concerts and film festivals; advertising and promotional services by means of distributorship services and retail store services featuring fragrances, toiletries, recorded media, computer software, computer games, jewellery, watches, clocks, watch straps, key rings, printed matter, books and stationery, luggage, bags, cases, wallets and purses, household utensils, vessels and containers, glassware, china and plastic goods, clothing, footwear and headgear, household textiles, travellers' rugs, duvets, covers for pillows, cushions or duvets, rugs, mats, games, toys, playthings and sporting goods; commercial administration of the licensing of the goods and services of others in Class 035. |
|---|---|---|---|
| | | | For: Entertainment services in the nature of production and post-production of motion pictures, short films, television shows, and multimedia entertainment content; entertainment services in the nature of production of special effects, namely, model-making services, computer-generated imagery and computer generated graphics for the production of motion pictures, short films, television shows, and multimedia entertainment content; recording studio services; animation production and special effects animation for television shows, films and multimedia entertainment |

| | | | |
|---|---|---|---|
| | | | content; production and presentation of exhibitions for education, cultural, or entertainment purposes, live theatrical stage shows, live musical and theatrical performances; theatre productions; film and television show production; electronic games services, namely, providing online electronic games; providing on-line non-downloadable electronic publications in the nature of books, magazines, journals, brochures in the field of entertainment, children's entertainment, animation, comedy, fiction, children's fiction and educational content; information relating to entertainment in Class 041. |
| 2,969,005 | CREATURE COMFORTS | Jul. 19, 2005 | For: Motion picture film and audio, video and digital tape recordings featuring animated characters for use on and/or transmission via radio, television, cable and satellite; motion picture films featuring animated characters; pre-recorded discs, namely, compact, audio and video discs, prerecorded tapes, namely, video, audio and digital tapes, and CD-ROMs for the storage of audio and/or visual information both separately and together for the purposes of synchronous or dis-synchronous playback or information retrieval, all featuring animated characters; musical, sound and video |

| | | | |
|---|---|---|---|
| | | | recordings featuring animated characters; interactive and multimedia computer software featuring animated characters; publications in electronic form, namely, books, magazines, periodicals, strip cartoons (individual and compilations), comics, all stored electronically on CD-ROMs, digital versatile disks, on-line sites and other electronic storage devices, all featuring animated characters in Class 009. |
| 3,627,049 | SHAUN THE SHEEP | May 26, 2009 | For: Radio, television, cable and satellite recordings and cinematographic films, all in the fields of music, action, adventure, comedy, interviews, documentaries, fiction, sports, video games, quizzes, nature, languages, teaching, classic movies science fiction, science and the arts; media for storage and/or reproduction of sound and/or visual images, namely, blank portable and stationary players for sound, video and data recordings on CD-ROMs, magnetic disks, optical disks, audio and video tape, and recorder/players for sound, video and data recordings, blank CD-ROMs, compact disks, digital versatile disks (DVDs), magnetic disks, optical disks, audio and video tape; pre-recorded discs, records, tapes, CD-ROMs, compact disks, digital versatile |

| | | | |
|---|---|---|---|
| | | | disks (DVDs), sound and video recordings in the fields of music, action, adventure, comedy, interviews, documentaries, fiction, sports, video games, quizzes, nature, languages, teaching, classic movies science fiction, science and the arts; interactive, computer and multi-media software for the purposes of education and entertainment in the fields of entertainment and animation, namely, radio, television, cable and satellite recordings and films in the field of music, action, adventure, comedy, interviews, documentaries, fiction, sports, video games, quizzes, nature, languages, teaching, classic movies science fiction, science and the arts; publications in electronic form that are downloadable and recorded on computer media, namely, books, magazines, comics, and newsletters relating to radio, television, cable and satellite recordings and films; cameras; eyeglasses cases; sunglasses; mobile phone straps; mouse pads and other personal computer accessories, keyboards, computer mouses, computer mouse pens in the nature of magneto-optical pens, computer cursor control devices, namely, light pens; speakers for computers; TV |

| | | | |
|---|---|---|---|
| | | | games, namely, video games and computer games software for use with a television screen; decorative magnets in Class 009.<br><br>For: Articles made of or coated with precious metal, namely, pins, brooches, money clips, belt buckles for clothing, badges, jewellery boxes, keyrings, key chains, cufflinks, wrist bracelets, ankle bracelets, bangles, amulets, earrings, necklaces, pendants, medallions, charms, personal rings, watch straps, tie pins, ornamental pins, jewellery pins, tie clips, non-monetary coins, hat and shoe ornaments, statuettes, figurines, figures, jewellery and cigarette cases, coasters, serving trays, goblets, egg cups, salt cellars, pepper pots, coffee services, tea pots, tea strainers, tea caddies, dinnerware, namely, plates, cups, mugs, saucers, bowls, serving platters and tableware, namely, timepieces, and wrist watches in Class 014.<br><br>For: Paper, cardboard and goods made from these materials, namely, party banners, cone paper party hats, paper party visors, party decorations, paper napkins, table covers, treat sacks and photographs; bookbindings; |

| | | | artists' materials, namely, arts and craft clay modelling kits, paint sets composed of paint and paper, and paint boxes, namely, arts and craft paint kits; paint brushes; printed matter, namely, brochures, newspapers, periodicals, magazines and books in the fields of entertainment and animation, namely, radio, television, cable and satellite recordings and films in the field of music, action, adventure, comedy, interviews, documentaries, fiction, sports, video games, quizzes, nature, languages, teaching, classic movies science fiction, science and the arts; diaries, personal organizers, blank bound journals, address books, trading cards, stickers, photo albums, scrapbooks, paper gift bags, postcards, posters, book markers, calendars, wrapping paper; photo stands; stationery, namely, invitations, announcement cards, place cards, thank you notes, stationery sets, files, paper, envelopes, memo pads, note pads, drawing pads, greeting cards, folders; pen and pencil cases; rubber erasers; pencils; pencil holders; adhesives and adhesive tape for stationery or household purposes; writing instruments; pens; ballpoint pens; felt pens; fibre-tip pens; |
|---|---|---|---|

| | | | |
|---|---|---|---|
| | | | crayons; chalks; pencil sharpeners; tracing paper; modelling materials, namely, modelling clay; photographs; iron-on transfers, namely, stickers; decalcomanias; colouring sets consisting of colouring instruments and colouring books; paper craft sets consisting of coloured paper for folding and/or paper cutout figures, and instructions for use therewith in Class 016.<br><br>For: Shoulder bags; carry-all bags; satchels; rucksacks; sports bags; handbags; purses; trunks; traveling bags; leather and imitations of leather and goods made of these materials, namely, trunks, traveling bags, bags, rucksacks, sports bags, handbags and purses; umbrellas; parasols; walking sticks; toiletry pouches sold empty; dog wardrobes, namely, clothing and headwear for dogs in Class 018.<br><br>For: Clothing, namely, T-shirts, shirts, blouses, sweatshirts, sweaters, fleece tops, trousers, shorts, skirts, underwear, boxer shorts, briefs, nightdresses, nightshirts, dressing gowns, robes, waistcoats, braces, vests, gloves, mittens, aprons, socks, scarves, neckties, mufflers, belts, dresses, coats, swim suits, pyjamas; footwear, |

|  |  |  | namely, slippers, slipper socks, training shoes, sneakers, sandals, boots, shoes, Japanese slippers; headgear, namely, caps, hats, baseball caps, headscarves, visors, ear muffs, headbands, sweatbands in Class 025.

For: Puppets and toy models based on characters from television, cable and satellite recordings and films; toy masks based on characters from television, toys, namely, plush toys of a variety of materials; plush dolls; toy figurines; dolls; doll accessories; nursery toys; toy ride-on animals; toy ride-on vehicles; games and playthings, namely, board games, jigsaw puzzles, modelling kits for making toy animal, people, vehicle, car, truck, aircraft, train and boat models; piñatas; sporting articles, namely, bats, hockey sticks, rackets for sports, balls, shuttlecocks, flippers for swimming, body boards, sailboards, surfboards, roller skates, ice skates, in-line skates, playground activity apparatus, namely, swings, bars, climbing frames, slides, roundabouts; non-illuminated decorations for Christmas trees; playing cards in Class 028.

For: Entertainment services for adults and children in the |
|---|---|---|---|

| | | | |
|---|---|---|---|
| | | | nature of providing television and radio programs, feature films in the fields of entertainment and animation, namely, radio, television, cable and satellite programs and films in the field of music, action, adventure, comedy, interviews, documentaries, fiction, sports, video games, quizzes, nature, languages, teaching, classic movies science fiction, science and the arts, short clips, variety, comedy, music, talk, interviews; conducting competitions in the fields of general and specialized knowledge; live performances by musical bands; live music concerts; theatrical, musical, variety, and comedy television and radio shows featuring characters from radio and television programs, video games and movies; live theatrical, musical, variety, and comedy road shows and live theatrical, musical, variety, and comedy staged events for entertainment featuring characters from radio and television programs, video games and movies; production and recording of films, radio and television programmes, video, audio and multi-media recordings; distribution of films, radio and television programmes for others; |

| | | | recording studio services; animation production and special effects services for radio, television or films; production and presentation of live theatrical, musical, variety, and comedy shows and performances; theatre services, namely, theatrical performances, plays and musicals; publication services, namely, book and music publishing services; electronic publishing services, namely, publication of textual audio, audio-visual and graphic works of others on optical disks, magnetic disks and tapes, and through a global computer network featuring or associated with television and radio programs; electronic games services, namely, provision of online games over the internet; providing on-line electronic publications, namely, providing information on and relating to television and radio programmes and feature films and characters featured therein; providing information relating to entertainment, namely, time and date listings for programmes and performances, programme information in Class 041. |
|---|---|---|---|

| | | | |
|---|---|---|---|
| 3,583,470 |  | Mar. 03, 2009 | For: cinematographic films, all in the fields of music, action, adventure, comedy; publications in electronic form that are downloadable and recorded on computer media, namely, books, magazines, comics, and newsletters relating to radio, television, cable and satellite recordings and films in Class 009.<br><br>For: Entertainment services for adults and children in the nature of providing television programs, feature films in the fields of entertainment and animation, namely, television, cable and satellite programs and films in the field of action, comedy, short clips, comedy; comedy television shows featuring characters from radio and television programs, video games and movies; production and recording of films, television programmes, video and multi-media recordings; recording studio services; providing on-line electronic publications, namely, providing information on and relating to television programmes and feature films and characters featured therein in Class 041. |
| 7,147,355 |  | Aug. 29, 2023 | For: Downloadable electronic publications, namely, journals, magazines, books and brochures in the field of entertainment, children's entertainment, family |

| | | | entertainment, animation, drama, comedy, fiction, children's fiction and educational content for children and adults; Downloadable educational media, namely, journals, magazines, books and brochures in the field of entertainment, children's entertainment, family entertainment, animation, drama, comedy, fiction, children's fiction and educational content for children and adults; Motion picture films and animated films in the fields of entertainment, children's entertainment, family entertainment, animation, drama, comedy, fiction, children's fiction and educational content for children and adults; Downloadable animated cartoon strips; Downloadable radio, television, cable and satellite recordings featuring entertainment, children's entertainment, family entertainment, animation, drama, comedy, fiction, children's fiction and educational content for children and adults; Blank digital media for storage and reproduction of sound and visual images; Pre-recorded magnetic data carriers featuring entertainment, children's entertainment, family entertainment, animation, drama, comedy, fiction, children's fiction and educational content for children and adults; Laser discs, compact discs, and DVDs featuring movies, films, animation, cartoons, music, |
| --- | --- | --- | --- |

|  |  |  | audio recording and video recordings, in the fields of entertainment, children's entertainment, family entertainment, animation, drama, comedy, fiction, children's fiction and educational content for children and adults; Downloadable computer game software relating to entertainment, children's entertainment, family entertainment, animation, drama, comedy, fiction, children's fiction and educational content for children and adults; Downloadable educational game software for children in the field of entertainment, children's entertainment, family entertainment, animation, drama, comedy, fiction, children's fiction and educational content for children and adults; Downloadable computer game software applications for games, entertainment and animation; downloadable educational mobile game applications in the field of entertainment, children's entertainment, family entertainment, animation, drama, comedy, fiction, children's fiction and educational content for children and adults; Downloadable computer game software; Cases and covers for smartphones, tablet computers and communications devices, namely, laptops and smart watches; Bags adapted for laptops; Mouse mats; Decorative magnets; Magnetic |
|---|---|---|---|

| | | | badges in the nature of electronically encoded badges and swipe cards for use with time clocks; Optical glasses; Sunglasses; Spectacle cases in Class 009.

For: Printed matter, namely, instructional and teaching materials in the nature of books in the fields of entertainment, children's entertainment, family entertainment, animation, drama, comedy, fiction, children's fiction and educational content for children and adults; Printed instructional and teaching materials in the field of entertainment, children's entertainment, family entertainment, animation, drama, comedy, fiction, children's fiction and educational content for children and adults; Printed books in the field of entertainment, children's entertainment, family entertainment, animation, drama, comedy, fiction, children's fiction and educational content for children and adults; Blank cards; Printed greetings cards; Printed postcards; Printed magazines in the field of entertainment, children's entertainment, family entertainment, animation, drama, comedy, fiction, children's fiction and educational content for children and adults; Printed calendars; Stationery; Writing instruments and writing materials, namely, paper; Paper; Envelopes; Memo pads; Adhesive note pads; Drawing pads; Folders |
|---|---|---|---|

| | | | being stationery; Pen and pencil cases; Erasers; Pencils; Pencil holders; Crayons; Chalks; Pencil sharpeners; Pencil cases; Temporary tattoo transfers; Stickers, Decalcomanias; Colouring sets consisting of colouring pens, pencils and printed matter, namely, coloring books; Modelling compounds for use by children; Artists' materials, namely, pens, pencils and paint brushes; Paint brushes; Paper craft sets consisting of coloured paper for folding and instructions for use therewith in Class 016.<br><br>For: Luggage and travel bags; school bags; satchels; book bags; rucksacks; sports bags; handbags; wallets and purses; suitcases and travelling bags; umbrellas; wash bags sold empty for carrying toiletries; cosmetic bags sold empty and purses in Class 018.<br><br>For: Textiles, namely, textile wall hangings, namely, cloth posters, textile fabrics for use in the manufacture of garments, bags, jackets, gloves, and apparel; textiles and substitutes for textiles, namely, textile tablecloths, textile substitute materials made from synthetic materials; bed covers and plastic table covers and textile tablecloths; travelling rugs, textile fabrics for use in the manufacture of apparel; duvets; duvet covers; pillowcases, covers for cushions or duvets in Class 024. |
|---|---|---|---|

| | | | For: Clothing, footwear and headwear, namely, t-shirts, shirts, tops, jumpers in the nature of knitted sweaters, and sweaters, trousers, sweatshirts, hoodies; aprons; socks; scarves; belts for clothing; dresses; coats; swimsuits; pyjamas; babywear, namely, bottoms, bodysuits and tops; shoes; boots; slippers; headwear, namely, caps in Class 025.<br><br>For: Toys, games and playthings, namely, puppets, action toys, board games, and model toy vehicles; puppets and toy models; plush toys; playing cards; educational toys and playthings, namely, electronic educational game machines for children; electronic educational game machines for children in Class 028.<br><br>For: Retail store services featuring paints, cutlery, and other digitally recorded media and animated cartoons, game software and computer software applications, downloadable music, video, audio, game, media and software files and applications, downloadable electronic publications, cases and covers for smartphones, tablets and communications devices, bags adapted for laptops, mouse mats, decorative magnets, magnetic badges, glasses, sunglasses, spectacle cases, hot water bottles, key rings, badges, printed matter, books, |

| | | | instructional and teaching materials, cards, postcards, book markers, art, pictures, prints, calendars, wrapping paper, stationery, paper, envelopes, memo pads, note pads, drawing pads, greeting cards, folders, writing cases, rubbers, erasers, pencils, pencil holders, adhesives for stationery or household purposes, adhesive tape, writing instruments, crayons, chalks, pencil sharpeners, tracing paper, modelling materials, pencil cases, transfers, stickers, decalcomanias, colouring sets consisting of colouring instruments and printed matter, paper craft sets and materials, artists' materials, paint brushes, luggage and bags, school bags, satchels, book bags, rucksacks, sports bag, handbags, wallets and purses, suitcases and travelling bags, wash bags, cosmetic bags and purses, all-purpose portable household containers, cups and cup holders, glassware, porcelain, earthenware, crockery, works of art, statuettes, figurines, sculptures, household linen and textiles, bedlinen, towels, table linen, rugs, buttons, badges for wear, rugs, mats and matting, non-textile wall hangings, wallpaper, clothing, footwear and headgear, babywear, clothing accessories, toys, games and playthings, jigsaw puzzles, board games, toy models, model craft kits, sporting articles, decorations for Christmas trees, plush toys, |
|---|---|---|---|

| | | | playing cards, educational toys and playthings; Organizing and conducting exhibitions, fairs and events for commercial and advertising purposes; Advertising and promotional advertising of products and services of third parties through sponsoring arrangements and license agreements relating to events, products, and services, namely, films, television shows, radio programs, theatrical productions, musical shows, music artists, international sporting events, competitions, musical concerts, awards shows, art and cultural exhibitions, festivals, charitable fundraising events, theme parks and attractions, museums, postal and delivery services, financial and banking services, real estate services, energy services, educational services, food and drink, furniture, clothing, toys and games, toiletries and cosmetics, pharmaceuticals, software and consumer technology, home goods and sporting goods in the fields of entertainment, children and adults entertainment, family entertainment, animation, drama, comedy, fiction, children and adults fiction and educational content for children and adults; Advertising and promotional services through the distribution of merchandise, namely, distribution of products for advertising purposes in Class 035. |
|---|---|---|---|

|  |  |  | For: Entertainment services, namely, providing classes and seminars in the field of entertainment, children's entertainment, family entertainment, animation, drama, comedy, fiction, children's fiction and educational content for children and adults; education, namely, providing classes and seminars in the field of entertainment, children's entertainment, family entertainment, animation, drama, comedy, fiction, children's fiction and educational content for children and adults; sporting and cultural activities, namely, conducting of sports competitions; animation production services; production of movie and TV special effects and animation production services for television and audio, video and digital media including online media; publication and editing of written text; video, audio and digital multimedia publishing services; on- line publishing services, namely, online electronic publishing of books and periodicals; providing online, non-downloadable electronic publications in the nature of journals, magazines, books and brochures in the field of entertainment, children's entertainment, family entertainment, animation, drama, comedy, fiction, children's fiction and educational content for children and adults; production of television shows; radio |
|---|---|---|---|

| | | | entertainment production; television entertainment services, namely, providing ongoing television programs in the field of entertainment, children and adults entertainment, family entertainment, animation, drama, comedy, fiction, children and adults fiction and educational content for children and adults via a global computer network; theatre productions; film production; distribution of films, radio and television programs, audio recordings, and multimedia entertainment content for others; production and distribution of videos in the field of entertainment, children and adults entertainment, family entertainment, animation, drama, comedy, fiction, children and adults fiction and educational content for children and adults; providing online videos, not downloadable, in the field of entertainment, children's entertainment, family entertainment, animation, drama, comedy, fiction, children's fiction and educational content for children and adults, not downloadable; providing online computer games, non-downloadable; presentation of variety shows; presentation of live show performances; amusement park services; providing amusement arcade services; organization of competitions in the fields of entertainment, children's entertainment, family |
|---|---|---|---|

| | | | |
|---|---|---|---|
| | | | entertainment, animation, drama, comedy, fiction, children's fiction and educational content for children and adults, for educational, cultural or for entertainment purposes; arranging and conducting of exhibitions for entertainment, cultural or educational purposes; Educational services, namely, providing displays and exhibits in the fields of entertainment, children's entertainment, family entertainment, animation, drama, comedy, fiction, children's fiction and educational content for children and adults; arranging and conducting workshops for educational, training or recreational purposes in the field of entertainment, children's entertainment, family entertainment, animation, drama, comedy, fiction, children's fiction and educational content for children and adults; arranging, conducting and providing seminars and presentations in the field of entertainment, children's entertainment, family entertainment, animation, drama, comedy, fiction, children's fiction and educational content for children and adults in Class 041. |
| 4,287,218 | TIMMY TIME | Feb. 12, 2013 | For: Sound and video recordings and motion picture films, namely, television, cable and satellite recordings and films, all in the fields of drama, comedy, fiction pre-recorded discs, featuring animation; |

| | | | sound and video recordings, namely, pre-recorded discs, sound and video recordings in the fields of drama, comedy fiction in Class 009. |
|---|---|---|---|
| 5,926,457 | TIMMY TIME | Dec. 03, 2019 | For: Online retail store services featuring merchandise and DVDs related to animated characters in Class 035. |
| 3,424,968 |  | May 13, 2008 | For: pre-recorded tapes and disks featuring presentation and interactive music in Class 009.<br><br>For: graphic art reproductions in Class 016. |

16. The U.S. registrations for the Aardman Trademarks are valid, subsisting, and in full force and effect, and some are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the Aardman Trademarks constitute *prima facie* evidence of their validity and of Aardman's exclusive right to use the Aardman Trademarks pursuant to 15 U.S.C. § 1057(b). True and correct copies of the United States Registration Certificates for the Aardman Trademarks are attached hereto as **Exhibit 2**.

17. The Aardman Trademarks are exclusive to Aardman and are displayed extensively on Aardman Products and in marketing and promotional materials. The Aardman Trademarks are also distinctive when applied to Aardman Products, signifying to the purchaser that the products come from Aardman and are manufactured to Aardman's quality standards. Whether Aardman manufactures the products itself or contracts with others to do so, Aardman has ensured that its products bearing the Aardman Trademarks are manufactured to the highest quality standards.

18. The Aardman Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1) and have been continuously used and never abandoned. The innovative marketing and

product designs of Aardman Products have enabled the Aardman Brands to achieve widespread recognition and fame and have made the Aardman Trademarks some of the most well-known marks in the world. The widespread fame, outstanding reputation, and significant goodwill associated with the Aardman Brands have made the Aardman Trademarks valuable assets of Aardman.

19.    Products bearing the Aardman Trademarks have been the subject of substantial and continuous marketing and promotion by Aardman. Aardman has and continues to market and promote the Aardman Trademarks in the industry and to consumers through traditional print media, authorized retailers, the official Aardman online store https://gromitunleashedshop.org.uk/, social media sites, and point of sale material.

20.    Aardman has expended substantial time, money, and other resources in advertising and promoting the Aardman Trademarks. Specifically, Aardman has expended substantial resources in advertising, promoting, and marketing featuring the Aardman Trademarks. Aardman Products have also been the subject of extensive unsolicited publicity. As a result, products bearing the Aardman Trademarks are widely recognized and exclusively associated by consumers as being high-quality products sourced from Aardman. The Aardman Trademarks have achieved tremendous fame and recognition, adding to the inherent distinctiveness of the marks. As such, the goodwill associated with the Aardman Trademarks is of immeasurable value to Aardman.

21.    Aardman Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with the Aardman Brands.

22.    Defendants are unknown individuals and business entities who own and/or operate one or more of the e-commerce stores under the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Aardman. On information and belief, Defendants reside and/or

operate in foreign jurisdictions and redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rules of Civil Procedure 17(b).

23.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiffs to learn Defendants' true identities and the exact interworking of their network. If Defendants provide additional credible information regarding their identities, Plaintiffs will take appropriate steps to amend the Complaint.

## IV.     DEFENDANTS' UNLAWFUL CONDUCT

24.     The success of the Aardman Brands has resulted in significant counterfeiting of the Aardman Trademarks and infringement of the Aardman Copyrighted Works. Because of this, Aardman has implemented a brand protection program that involves investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. Recently, Aardman has identified many fully interactive e-commerce stores offering Unauthorized Products on online marketplace platforms like Alibaba Group Holding Limited ("Alibaba"), AliExpress.com ("AliExpress"), Amazon.com, Inc. ("Amazon"), DHGate.com ("DHGate"), Roadget Business PTE. Ltd. ("SHEIN"), eBay.com ("eBay"), and Walmart, Inc. ("Walmart"), including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a report prepared for The Buy Safe America Coalition, most infringing products now come through international mail and express courier services because of increased sales from foreign online infringers. *The*

*Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States*, prepared by John Dunham & Associates (**Exhibit 3**).

25.     Because the infringing products sold by offshore online infringers do not enter normal retail distribution channels, the US economy lost an estimated 300,000 or more full-time jobs in the wholesale and retail sectors alone in 2020. *Id.* When accounting for lost jobs from suppliers that would serve these retail and wholesale establishments, and the lost jobs that would have been induced by employees re-spending their wages in the economy, the total economic impact resulting from the sale of infringing products was estimated to cost the United States economy over 650,000 full-time jobs that would have paid over $33.6 billion in wages and benefits. *Id.* Additionally, it is estimated that the importation of infringing goods cost the United States government nearly $7.2 billion in personal and business tax revenues in the same period. *Id.*

26.     Furthermore, online marketplace platforms like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 4**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 5**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and that "[t]he ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders." Infringers hedge against the risk of being caught and having their websites taken down

from an e-commerce platform by establishing multiple virtual storefronts. **Exhibit 5** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 5** at p. 39. Further, "[e]-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of [infringing products] and [infringers]." **Exhibit 4** at 186-187. Specifically, brand owners are forced to "suffer through a long and convoluted notice and takedown procedure only [for the infringer] to reappear under a new false name and address in short order." *Id.* at p. 161.

27.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases; offer shipping to the United States, including Illinois; accept payment in U.S. dollars; and, on information and belief, sell Unauthorized Products to residents of Illinois.

28.     Defendants concurrently employ and benefit from similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via numerous methods, including credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Aardman has not licensed or authorized Defendants to use any of the Aardman Trademarks and/or to copy or distribute the Aardman Copyrighted Works, and none of the Defendants are authorized retailers of Aardman Products.

29.     Many Defendants also deceive unknowing consumers by using the Aardman Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract consumers using search engines to find websites relevant to Aardman Products. Other e-commerce stores operating under the Seller Aliases omit using the Aardman Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Aardman Products.

30.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

31.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their operation, and to avoid being shut down.

32.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Products for sale by the Seller Aliases bear

similar irregularities and indicia of being unauthorized to one another, suggesting that the Unauthorized Products were manufactured by and come from a common source and that Defendants are interrelated.

33. E-commerce store operators like Defendants communicate with each other through QQ.com chat rooms and utilize websites, like sellerdefense.cn, that provide tactics for operating multiple online marketplace accounts and evading detection by brand owners. Websites like sellerdefense.cn also tip off e-commerce store operators, like Defendants, of new intellectual property infringement lawsuits filed by brand owners, such as Aardman, and recommend that e-commerce operators cease their infringing activity, liquidate their associated financial accounts, and change the payment processors that they currently use to accept payments in their online stores.

34. Infringers, such as Defendants, typically operate under multiple seller aliases and payment accounts so that they can continue operation despite Plaintiffs' enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiffs.

35. Defendants are working to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Aardman, have knowingly and willfully used, and continue to use, the Aardman Trademarks and/or copies of the Aardman Copyrighted Works in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized Products into the United States and Illinois over the Internet.

36. Defendants' unauthorized use of the Aardman Trademarks and/or Aardman Copyrighted Works in connection with the advertising, distribution, offering for sale, and sale of

Unauthorized Products, including the sale of Unauthorized Products into the United States, including Illinois, is likely to cause, and has caused, confusion, mistake, and deception by and among consumers and is irreparably harming Aardman.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

37.     Aardman hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

38.     This is a trademark infringement action against certain Defendants[2] based on their unauthorized use in commerce of counterfeit imitations of the Aardman Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The Aardman Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Aardman Products offered, sold, or marketed under the Aardman Trademarks.

39.     Certain Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the Aardman Trademarks without Aardman's permission.

40.     Aardman owns the Aardman Trademarks. Aardman's United States registrations for the Aardman Trademarks are in full force and effect. Upon information and belief, certain Defendants have knowledge of Aardman's rights in the Aardman Trademarks and are willfully infringing and intentionally using infringing and counterfeit versions of the Aardman Trademarks. Those Defendants' willful, intentional, and unauthorized use of the Aardman Trademarks is likely to cause, and is causing, confusion, mistake, and deception as to the origin and quality of the Unauthorized Products among the general public.

---

[2] Count I applies to all Defendants who infringed the Aardman Trademarks, as outlined in Schedule A attached hereto.

41.     Certain Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

42.     Aardman has no adequate remedy at law, and if certain Defendants' actions are not enjoined, Aardman will continue to suffer irreparable harm to its reputation and the goodwill of the Aardman Trademarks.

43.     The injuries and damages sustained by Aardman have been directly and proximately caused by certain Defendants' wrongful reproduction, use of advertisement, promotion, offering to sell, and/or sale of Unauthorized Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

44.     Aardman hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

45.     Certain Defendants'[3] promotion, marketing, offering for sale, and sale of Unauthorized Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Aardman or the origin, sponsorship, or approval of the Unauthorized Products by Aardman.

46.     By using the Aardman Trademarks in connection with the offering for sale and/or sale of Unauthorized Products, certain Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Products.

47.     Certain Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

---

[3] Count II applies to all Defendants who infringed the Aardman Trademarks, as outlined in Schedule A attached hereto.

48.     Aardman has no adequate remedy at law and will continue to suffer irreparable harm to its reputation and the associated goodwill of the Aardman Brands if certain Defendants' actions are not enjoined.

### COUNT III
### COPYRIGHT INFRINGEMENT OF UNITED STATES COPYRIGHT REGISTRATIONS (17 U.S.C. §§ 106 and 501)

49.     Aardman hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

50.     The Aardman Copyrighted Works, including the distinctive characters embodied therein, constitute original works and copyrightable subject matter pursuant to the Copyright Act, 17 U.S.C. § 101, *et seq*.

51.     Aardman owns the Aardman Copyrighted Works.  Aardman has complied with the registration requirements of 17 U.S.C. § 411(a) for the Aardman Copyrighted Works. The Aardman Copyrighted Works are protected by copyright registration numbers which were duly issued to Aardman by the United States Copyright Office. At all relevant times, Aardman has been, and still is, the owner of all rights, title, and interest in the Aardman Copyrighted Works, which have never been assigned, licensed, or otherwise transferred to Defendants.

52.     The Aardman Copyrighted Works are published on the internet and available to Defendants online. As such, Defendants had access to the Aardman Copyrighted Works via the internet.

53.     Without authorization from Aardman, or any right under the law, certain Defendants[4] have deliberately copied, displayed, distributed, reproduced, and/or made derivative works incorporating the Aardman Copyrighted Works on e-commerce stores operating under the

---

[4] Count III applies to all Defendants who infringed the Aardman Copyrighted Works, as outlined in Schedule A attached hereto.

Seller Aliases and the corresponding Unauthorized Products. Certain Defendants' derivative works are virtually identical to and/or are substantially similar to the look and feel of the Aardman Copyrighted Works. Such conduct infringes and continues to infringe the Aardman Copyrighted Works in violation of 17 U.S.C. § 501(a) and 17 U.S.C. §§ 106(1)–(3), (5).

54.     Certain Defendants reap the benefits of the unauthorized copying and distribution of the Aardman Copyrighted Works in the form of revenue and other profits that are driven by the sale of Unauthorized Products.

55.     Certain Defendants have unlawfully appropriated Aardman's protectable expression by taking material of substance and value and creating Unauthorized Products that capture the total concept and feel of the Aardman Copyrighted Works, including the distinctive characters embodied therein.

56.     On information and belief, certain Defendants' infringement has been willful, intentional, purposeful, and in disregard of and with indifference to Aardman's rights.

57.     Certain Defendants, by their actions, have damaged Aardman in an amount to be determined at trial.

58.     Certain Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Aardman great and irreparable injury that cannot fully be compensated or measured in money. Aardman has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Aardman is entitled to a preliminary and permanent injunction prohibiting further infringement of the Aardman Copyrighted Works.

## PRAYER FOR RELIEF

WHEREFORE, Aardman prays for judgment against Defendants as follows:

1)      That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

     a. using the Aardman Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a Aardman Product or is not authorized by Aardman to be sold in connection with the Aardman Trademarks;

     b. reproducing, distributing copies of, making derivative works of, or publicly displaying the Aardman Copyrighted Works in any manner without the express authorization of Aardman;

     c. passing off, inducing, or enabling others to sell or pass off any products as Aardman Products or any other product produced by Aardman, that is not Aardman's or not produced under the authorization, control, or supervision of Aardman and approved by Aardman for sale under the Aardman Trademarks and/or Aardman Copyrighted Works;

     d. committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Products are those sold under the authorization, control, or supervision of Aardman, or are sponsored by, approved by, or otherwise connected with Aardman;

     e. further infringing the Aardman Trademarks and/or Aardman Copyrighted Works and damaging Aardman's goodwill; and

    f.    manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Aardman, nor authorized by Aardman to be sold or offered for sale, and which bear any of the Aardman Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof and/or which bear the Aardman Copyrighted Works;

2) Entry of an Order that, upon Aardman's request, those with notice of the injunction, including without limitation, any websites and/or online marketplace platforms like Alibaba, AliExpress, Amazon, DHGate, SHEIN, eBay, and Walmart shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Aardman Trademarks and/or Aardman Copyrighted Works;

3) That certain Defendants account for and pay to Aardman all profits realized by those Defendants by reason of those Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Aardman Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Aardman be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Aardman Trademarks;

5) As a direct and proximate result of certain Defendants' infringement of the Aardman Copyrighted Works, Aardman is entitled to damages as well as those Defendants' profits, pursuant to 17 U.S.C. § 504(b);

6) Alternatively, and at Aardman's election prior to any final judgment being entered, Aardman is entitled to the maximum amount of statutory damages provided by law, $150,000 per work infringed pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c);

7) Aardman is further entitled to recover its attorneys' fees and full costs for bringing this action pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117(a); and

8) Award any and all other relief that this Court deems just and proper.


Dated this 7th day of August 2025.                          Respectfully submitted,


                                                            /s/ Martin F. Trainor
                                                            Martin F. Trainor
                                                            Sydney Fenton
                                                            Alexander Whang
                                                            TME Law, P.C.
                                                            10 S. Riverside Plaza
                                                            Suite 875
                                                            Chicago, Illinois 60606
                                                            708.475.1127
                                                            martin@tme-law.com
                                                            sydney@tme-law.com
                                                            alexander@tme-law.com

                                                            *Counsel for Aardman Animations Limited
                                                            and Wallace & Gromit Limited*